# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TRAVIS DELANEY WILLIAMS,

    Plaintiff,

v.                                                                        Case No. 21-CV-934

SARAH MARTIN, SHERYL KINYON,
JAMIE ADAMS, and
DR. EDWARD RILEY,

    Defendants.

## ORDER

        Plaintiff Travis Delaney Williams, who is currently out of custody and representing himself, filed a civil rights complaint under 42 U.S.C. § 1983 alleging that the defendants violated his civil rights. (ECF No. 1.) He also filed a motion for leave to proceed without prepayment of the filing fee. (ECF No. 2). Because not all parties have had the opportunity to consent to magistrate judge jurisdiction, the case was randomly referred to a U.S. District Court Judge for the limited purpose of screening the complaint. This order resolves Williams's motion for leave to proceed without prepayment of the filing fee and screens the complaint. The case will be returned to Magistrate Judge Stephen C. Dries after entry of this order.

    **1. Motion for Leave to Proceed without Prepaying the Filing Fee**

        The Prison Litigation Reform Act (PLRA) applies to this case because Williams was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee.

28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from her prisoner account. *Id.*

On August 8, 2021, the court ordered Williams to pay an initial partial filing fee of $0.54 by September 10, 2021. (ECF No. 6.) On August 16, 2021, Williams filed a motion to waive payment of the initial partial filing fee, (ECF No. 7), which the court denied on August 26, 2021. (ECF No. 10). The court gave Williams until September 14, 2021 to pay the initial partial filing fee. On September 14, 2021, Williams filed a "response" to the court's August 26 order arguing that the court erred in finding he had the means to pay the initial partial filing fee. (ECF No. 12.) On September 29, 2021, the court explained why its August 26 order was correct and gave Williams until October 15, 2021 to pay the initial partial filing fee. (ECF No. 15.) Williams paid the fee on October 19, 2021. Accordingly, the court grants his motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

2. **Screening the Complaint**

   2.1 *Federal Screening Standard*

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668

F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 *Williams's Allegations*

Williams alleges that late in 2019, Defendant Dr. Edward Riley, who is an orthopedic specialist employed at Gunderson Hospital and Clinics in La Crosse, Wisconsin, determined that he needed bilateral shoulder surgery. (ECF No. 1 at 2.) Dr. Riley informed Williams that to proceed with the surgery, he would need Williams's past medical records detailing Williams's previous bicep reattachment surgery. (*Id.*) Williams states the only way he could obtain these records was through Defendant Sarah Martin, an employee of the Health Services Unit (HSU) at the Wisconsin Secure Program Facility (WSPF). (*Id.* at 1-2.)

Williams met with Defendants Sheryl Kinyon, HSU Assistant Manager, and Jamie Adams, HSU Manager, in January 2020, to review the June 2019 fall that led to his appointment with Dr. Riley and to discuss his need for shoulder surgery. (*Id.* at 2-3.) He also informed them that he needed pain relief, specifically the pain medication Lyrica, as recommended by Dr. Riley. (*Id*. at 3.) He further requested at this meeting that Martin provide Dr. Riley with the medical records needed to schedule surgery. (*Id.*) Specifically, Williams requested that over 200 pages of documents be sent to Dr. Riley. (*Id.*)

Williams states that Martin intentionally never provided Dr. Riley the records, which resulted in Dr. Riley refusing to perform surgery on Williams's shoulders. (*Id.* at 4.) Williams, then, was left to sit in pain for over two years until Dr. Riley provided him a cortisone shot in 2021. (*Id.*) Williams also states that by January 2021, he was unable to lift his left shoulder. (*Id.*)

Williams alleges that Martin, Adams, and Kinyon refused to provide him pain medication, treat his shoulder, or make arrangements for surgery in retaliation for filing his lawsuit related to the fall that caused the shoulder injury. (*Id.* at 4-5.) He specifically alleges that Kinyon, throughout 2019 and 2020, would deny him any pain treatment for his shoulder and would lie on her reports, stating she prescribed ice, when in fact she prescribed nothing. (*Id.* at 5.)

Williams also states that Dr. Riley knew the seriousness of his condition but did nothing to ensure Williams would get the surgery, essentially denying him the surgery. (*Id.* at 7.) Dr. Riley also knew the cortisone shots would not solve the problem. (*Id.* at 8.)

*2.3 Analysis*

At the outset, Williams cannot bring a § 1983 claim against Dr. Riley, who is employed by a private entity and not acting under the color of state law. To state a claim under § 1983, a plaintiff must show that "the alleged deprivation was committed by a person acting under the color of state law." *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 823 (7th Cir. 2009). To determine whether an employee of a private entity is acting under the color of state law, the court must find a "'close nexus between the State and the challenged action' that the challenged action 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro Edison Co.*, 419 U.S. 345, 352 (1974)). Ultimately, the question is whether "the alleged infringement of federal rights [is] 'fairly attributable to the State?'" *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). In cases where the private entity in question is a health care provider, the court needs to examine the "trilateral relationship" between the person in custody, the state, and the private health care provider, including (1) the setting in which the medical care is rendered (i.e. whether the service is provided outside the prison walls); (2) the contractual relationship between the state and the medical care provider (i.e. whether the service was voluntary); and (3) the relationship of the private provider to the person in custody (i.e. whether the private provider is replacing medical care or simply assisting with medical care). *Id.* at 826.

Williams explicitly alleges that Dr. Riley works for a private health care entity, and he does not include any allegations suggesting that WSPF had a contractual relationship with Dr. Riley or his place of employment. Instead, Williams alleges that Dr. Riley was providing a specialty service and not replacing medical care. As such, Dr. Riley cannot be held liable under § 1983 and is dismissed from the case.

5

However, Williams does state claims against Martin, Adams, and Kinyon. Williams alleges that Martin, Adams, and Kinyon were deliberately indifferent to his serious medical needs in failing to give him pain medication and arrange shoulder surgery. "To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea,* 631 F.3d 843 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). At this stage, Williams' shoulder injury qualifies as an objectively serious medical need.

A plaintiff must allege "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). The plaintiff also "must show more than mere evidence of malpractice." *Id*. The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment*."* *Stallings v. Liping Zhang*, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). These choices include where a prison official fails to act or do anything to address the serious medical need. *See Gayton*, 593 F.3d at 623-624 (reversing summary judgment in favor of a nurse who refused to examine or treat a vomiting inmate). They also include where an official delays necessary treatment, aggravating a condition

6

or needlessly prolonging a plaintiff's pain. *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012).

Williams alleges that Martin, Adams, and Kinyon knew he needed shoulder surgery and knew he was in extreme pain but did not address these issues for several months. He may proceed on an Eighth Amendment deliberate indifference claim against them.

Williams also alleges that Martin, Adams, and Kinyon intentionally failed to treat his pain or schedule surgery in retaliation for filing a lawsuit related to the fall that caused his shoulder injury. To state a retaliation claim, a plaintiff must allege that "(1) [the plaintiff] engaged in an activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). Williams sufficiently alleges these elements. Filing a lawsuit is a protected activity. Not getting medical treatment would deter such activity. And, he explicitly states that the lawsuit was the reason Martin, Adams, and Kinyon refused to provide medical treatment. He may proceed on a First Amendment retaliation claim against them.

3. Conclusion

**IT IS THEREFORE ORDERED** that that Williams's motion for leave to proceed without prepaying the filing fee (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Dr. Edward Riley is **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Sarah Martin, Sheryl Kinyon, and

Jamie Adams. It is **ORDERED** that, under the informal service agreement, those defendants shall file a responsive pleading to the complaint within 60 days.

**IT IS FURTHER ORDERED** that Williams submit payments towards the remaining balance of his filing fee, $349.46, to the Clerk of Courts office as he is able.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

Williams is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Williams's failure to keep the court advised of his whereabouts may result in the dismissal of this case without further notice.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Williams may find useful in prosecuting his case.

**IT IS FURTHER ORDERED** that this case is returned to Magistrate Judge Stephen C. Dries for further proceedings. The case is no longer referred to Judge William C. Griesbach.

Dated in Green Bay, Wisconsin this 9th day of December, 2021.

s/ William C. Griesbach  
William C. Griesbach  
U.S. District Judge