UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRAVIS DELANEY WILLIAMS,

        Plaintiff,

        v.                                    Case No. 21-C-934

SARAH MARTIN, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Travis Delaney Williams, who is representing himself, is proceeding on an Eighth Amendment claim that Defendants Sarah Martin, Sheryl Kinyon, Jaime Adams, Edward Riley, and Jane Doe Pharmacy Supervisor intentionally delayed surgery and unnecessarily prolonged his left shoulder pain after he fell and triggered the injury in June 2019. Dkt. Nos. 27 & 28. The Court directed Plaintiff to identify Jane Doe "Pharmacy Supervisor" by December 23, 2022, if he wished to proceed against her in this case. Dkt. No. 38. Plaintiff failed to identify that defendant; thus, the Court will dismiss her from this case. In April 2023, the remainder of the defendants filed motions for summary judgment. Dkt. Nos. 43 & 50. After several extensions of time to respond, Plaintiff filed a response to Defendant Riley's motion for summary judgment on July 27, 2023, but he did not file a response to the other defendants' motion. *See* Dkt. Nos. 56, 59, & 61–63. Because the undisputed facts show that the defendants were not deliberately indifferent, the Court will grant the motions for summary judgment and dismiss this case.

## UNDISPUTED FACTS

At the relevant time, Plaintiff was an inmate at the Wisconsin Secure Program Facility. Dkt. No. 51, ¶8. Defendants are Dr. Edward Riley, Medical Program Associate Assistant (MPAA)

Sarah Martin, Health Services Manager (HSM) Jaime Adams, and Health Services Assistant Manager (HSAM) Sheryl Kinyon. *Id.*, ¶9; Dkt. No. 45, ¶¶2–4.

Plaintiff has chronic bilateral shoulder pain, along with an extensive list of other medical conditions, including: a mood disorder, rashes, atypical chest pain, benign prostatic hyperplasia, chronic GERD, chronic pain of right knee, constipation, deep vein thrombosis, dermatitis, dry eye, elevated CK, folliculitis, hematuria, headaches, hypertension, hyperlipidemia, intermittent explosive disorder, lower back pain, morbid obesity, nasal sore, nose congestion, obstructive sleep apnea, otitis externa, pain in both feet, testicular pain, tinea, urinary incontinence, and vitamin D deficiency. Dkt. No. 51, ¶24; Dkt. No. 45, ¶64.

On June 24, 2019, Plaintiff experienced a fall that triggered pain in his left shoulder. Dkt. No. 45, ¶50. In response, HSAM Kinyon scheduled a nursing appointment. *Id.*, ¶51. On June 27, 2019, Nurse Wehrle (not a defendant) saw Plaintiff, who reported that he had a bruise on his left forearm and increased left shoulder pain after the fall. *Id.*, ¶52. Nurse Wehrle examined Plaintiff and told him to apply ice until he was seen by the institution Provider; she also advised him of his upcoming appointments to address his pain. *Id.*

HSM Adams, HSAM Kinyon, and MPAA Martin never saw or treated Plaintiff in connection with his chronic shoulder pain. *Id.*, ¶¶ 54–59, 60, & 72. With respect to MPAA Martin, she is not licensed to practice medicine and cannot provide any medical care at all—she is limited to an administrative role in the Health Services Unit (HSU). *Id.*, ¶7. With respect to HSM Adams and HSAM Kinyon, they are licensed registered nurses who met with Plaintiff several times over the years in connection with his *other* medical issues, but they never discussed or provided treatment for his chronic shoulder pain. *Id.*, ¶¶ 55-59, 66–69, & 72-73. HSM Adams and HSAM Kinyon both swear that they were not aware that Plaintiff was experiencing severe left shoulder

2

pain after his fall in 2019. *Id.*, ¶62. They further note that, even if they were aware of the circumstances, they could not prescribe, cancel, or modify medications; make referrals to offsite providers; approve treatment recommendations from offsite providers; or otherwise override or alter a medical decision made by an advanced care provider. *Id.*, ¶¶47, 49, 53, & 81. Thus, contrary to Plaintiff's allegations, HSM Adams and HSAM Kinyon did not (and could not) discontinue, or override the decision to discontinue, his prescription pain medication for Lyrica in May 2019. *Id.*, ¶¶79–97.

Dr. Riley is an orthopedic surgeon who works at Gundersen Boscobel Area Hospital and Clinics. Dkt. No. 51, ¶¶9–12. He saw Plaintiff five times in connection with complaints of chronic bilateral shoulder pain. *Id.*, ¶¶25–76. Plaintiff's first two appointments with Dr. Riley were in 2017. *Id.*, ¶¶25–38. Plaintiff first saw Dr. Riley in August 2017. *Id.*, ¶¶25-31. At that time, Dr. Riley examined Plaintiff's shoulders and found that he had full range of motion in both shoulders, that his rotator cuffs were strong, and that he did not have any atrophy or defects on the front of his shoulders. *Id.*, ¶27. Dr. Riley also reviewed x-rays of Plaintiff's shoulders, which showed some osteoarthritis in each shoulder, with the right shoulder being worse than the left. *Id.*, ¶29. Given these findings, Dr. Riley injected Plaintiff's shoulders with a cortisone injection that relieves pain and swelling in joints. *Id.*, ¶30.

A few months later, in December 2017, Plaintiff saw Dr. Riley again. *Id.*, ¶¶32-39. During this visit, Plaintiff reported that the cortisone injections from August 2017 did not help at all, and in fact, made his shoulder pain worse. *Id.*, ¶33. Plaintiff complained that his right shoulder was worse than the left, particularly with writing. *Id.* Plaintiff also reported that he had previously had surgery on his left shoulder. *Id.*, ¶34. Dr. Riley, however, had no medical records for this previous surgery. *Id.* Given that Plaintiff complained that his right shoulder was worse than his left, and

3

given that Plaintiff had reported a previous surgery on his left shoulder, Dr. Riley believed it was medically appropriate to begin investigating if surgery may also be appropriate for the right shoulder. *Id.*, ¶38. As a result, he ordered an MRI of Plaintiff's right shoulder to see if he had a surgically improvable condition. *Id.*, ¶36. On March 6, 2018, Plaintiff underwent a right shoulder MRI that showed osteoarthritis. *Id.*, ¶40. However, Plaintiff did not return to see Dr. Riley at that time. *Id.*, ¶41. About a year and a half later, in June 2019, Plaintiff experienced the fall that triggered the pain in his left shoulder. Dkt. No. 45, ¶50.

Dr. Riley saw Plaintiff again in February 2020. Dkt. No. 51, ¶¶42–58. At that visit, Plaintiff told Dr. Riley that he had recently had "shots" at UW Health and that he wanted to have those shots again. *Id.*, ¶43. Dr. Riley reviewed Plaintiff's March 2018 MRI and examined his shoulders. *Id.*, ¶¶46-47. He recommended an open distal clavicle excision surgery for the right shoulder to help alleviate Plaintiff's right shoulder pain. *Id*. Dr. Riley advised Plaintiff that he believed it was medically appropriate to surgically treat his right shoulder first and he would not recommend surgery on his left shoulder until he was able to review the operative notes from his past left shoulder surgery, along with any relevant imaging. *Id.*, ¶¶49–51. Dr. Riley explains that he did not believe it was appropriate to operate on the left shoulder until he had more information about the past surgery, and he would not have operated on both shoulders at the same time anyway because it is important to focus on the most significant injury. *Id.*, ¶¶37–38. Dr. Riley then advised the institution that he wanted to see the previous surgical records for Plaintiff's left shoulder surgery. *Id.*, ¶58.

Dr. Riley explains that he did not administer cortisone injections into either of Plaintiff's shoulders during the February 2020 appointment because there is a risk of tissue deterioration if shoulders are injected too frequently. *Id.*, ¶¶53–55. Plaintiff had just been injected by UW Health

4

in November 2019, and more injections in February 2020 would have been detrimental. *Id*. Further, the shots Plaintiff wanted (the ones he had received from UW Health in November 2019) were ultrasound guided injections, which Dr. Riley does not perform as a part of his practice. *Id*., ¶¶43, 53. The shots that Dr. Riley does perform (the same ones he administered in August 2017) had allegedly made Plaintiff's pain worse. *Id*. In light of these circumstances, Dr. Riley believed surgery would be a medically appropriate option for the right shoulder and he recommended an open distal clavicle excision surgery for the right shoulder. *Id*., ¶48.

On October 9, 2020, Dr. Riley performed the surgery. *Id*., ¶¶59–66. At the time of the surgery, Dr. Riley still had not received any records for Plaintiff's previous left shoulder surgery. *Id*., ¶¶61-63. Nonetheless, Plaintiff again asked Dr. Riley to operate on his left shoulder. *Id*., ¶62. Dr. Riley did not believe it was medically appropriate to operate on Plaintiff's left shoulder at the time as he still had not yet received outside records, and because Plaintiff was there for an operation on the right shoulder, which was the priority. *Id*., ¶64.

On December 4, 2020, Plaintiff returned to see Dr. Riley for the final time. *Id*., ¶¶67–71. Dr. Riley examined Plaintiff's right shoulder, which was healing appropriately. *Id*., ¶67. Plaintiff again complained of left shoulder pain and again wanted left shoulder injections. *Id*., ¶68. Dr. Riley examined Plaintiff's shoulders and found equal range of motion in both shoulders. *Id*., ¶69. But given the length of time since Plaintiff's last shoulder injection, his ongoing pain, his desire for the injection, and because his right shoulder was now treated and healing, Dr. Riley believed it was medically appropriate to give a cortisone injection in the left shoulder at this visit. *Id*., ¶71. At that time, Dr. Riley had received records of Plaintiff's November 25, 2019 cortisone injection at UW Health but he still did not have surgical records for Plaintiff's previous left shoulder surgery. *Id*., ¶73.

MPAA Martin was the individual who sent Dr. Riley the November 25, 2019 cortisone injection records from UW Health. She states that she did not know that Plaintiff had wanted her to send records about a surgery he received in 2010 because the Health Service Requests (HSR's) he submitted did not specify that the surgery occurred before he was incarcerated. Dkt. No. 45, ¶13. MPAA Martin explains that Plaintiff entered the Wisconsin Prison System in 2014, so any records about a 2010 surgery would not have been on file with the Department of Corrections. *Id.*, ¶14. The only way to access those records would have been to send a release of information to the hospital where Plaintiff received that care. *Id.*, ¶15. If Plaintiff had specified that his request concerned a 2010 surgery, MPAA Martin would have contacted the Provider at the institution to ask whether those records should be obtained. *Id.*, ¶16. If the Provider had approved the request, she would have sent a release of information to the hospital where Plaintiff received his 2010 surgery. *Id.* But she understood Plaintiff's HSRs to be about the November 25, 2019 cortisone injection at UW Health, so that is what she sent to Dr. Riley. *Id.* MPAA Martin states that she does not recall a specific call from Dr. Riley's office requesting documents about Plaintiff's left shoulder surgery and that another member of her office may have taken that call. *Id.*, ¶21. She states that, contrary to Plaintiff's allegation, he never gave her 200 pages of surgical progress notes about his left shoulder surgery to copy and send to Dr. Riley. *Id.*, ¶9. She states that, given the alleged size of the documents, she would have remembered if they had been given to her. *Id.*

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Celotex *Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Ames *v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th

Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The party asserting that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

To survive summary judgment on an Eighth Amendment deliberate indifference claim, Plaintiff must provide evidence from which a reasonable jury could conclude that: (1) he faced an objectively serious medical condition; and (2) the defendants subjectively knew about the medical condition and disregarded it. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (citing *Arnett v. Webster*, 658 F.3d 742, 750, 751 (7th Cir. 2011)). The first, objective, element is satisfied by showing that Plaintiff suffered from a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citing *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008)). The second, subjective, element is satisfied by showing that a prison official "knows of a substantial risk of harm to an inmate and 'either acts or fails to act in disregard of that risk.'" *Gomez*, 680 F.3d at 865 (quoting *Arnett*, 658 F.3d at 750). This is a "high

7

hurdle." *See Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). It requires "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Id*. (quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)). Plaintiff must show that Defendants' decision was "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)).

HSM Adams and HSAM Kinyon are entitled to summary judgment because it is undisputed that they never saw, treated, or knew about Plaintiff's chronic shoulder pain. They also did not have authority to discontinue or override the decision to discontinue Plaintiff's prescription for Lyrica in May 2019. Nor could they order left shoulder surgery themselves after his fall in June 2019. Similarly, MPAA Martin is entitled to summary judgment because it is undisputed that she did not know that Plaintiff wanted his pre-incarceration surgery records from 2010, rather than his injection records from 2019. To the extent MPAA Martin misunderstood Plaintiff's record's request, that amounts to mistake or negligence and does not meet the "high hurdle" of deliberate indifference. *Rosario*, 670 F.3d at 821.

Dr. Riley is also entitled to summary judgment. Dr. Riley first argues that he is not a "state actor." *See e.g. Shields v. Illinois Dept. of Corrections*, 746 F.3d 782 (7th Cir. 2014). He states that his interactions with Plaintiff were only "intermittent" and "indirect;" and that he neither has a contact with the DOC nor does his practice focus on prison inmates. Plaintiff did not respond to this argument through his briefing materials, but the Court need not resolve the issue because Dr. Riley would prevail on the merits of the deliberate indifference claim.

8

Indeed, based on the undisputed record, no reasonable jury could conclude that Dr. Riley failed to use medical judgment in treating Plaintiff's chronic shoulder pain. Dr. Riley initially saw Plaintiff in 2017. During those appointments, he examined both of Plaintiff's shoulders, reviewed x-rays, provided cortisone injections in both shoulders, and ordered an MRI to begin investigating if surgery may be an appropriate next step to treat his right shoulder pain. Dr. Riley explains that he began with the right shoulder because it is important to focus on the most significant complaint and Plaintiff had complained that his right shoulder was worse than his left shoulder. X-ray imaging also showed that the osteoarthritis in Plaintiff's right shoulder was worse than in the left. Plaintiff had also previously undergone left shoulder surgery, so it was better to focus surgical attention on the other shoulder with worse osteoarthritis. Dr. Riley explains that he ultimately did not order or perform left shoulder surgery in 2020 because he never received records of Plaintiff's previous left shoulder surgery (which he had requested from the institution). He states that it is not medically appropriate to conduct surgery without first reviewing a patient's full surgical records. Dr. Riley's decision to hold off on left shoulder surgery until he could review Plaintiff's full medical records is a quintessential exercise of medical judgment, and Plaintiff's disagreement with that decision does not establish deliberate indifference. Further, even though Plaintiff did not receive the left shoulder surgery he wanted in 2020, he still received treatment for his left shoulder through cortisone injections. To the extent there were any delays in treatment, it was caused by the DOC's decision to take him to UW Health in November 2019 rather than back to Dr. Riley. Dr. Riley did not have any control over when he saw Plaintiff—he could only treat Plaintiff when the DOC sought out and scheduled an appointment.

Plaintiff's primary argument in response is that Dr. Riley simply "chose" what he wanted to treat. Dkt. No. 63, ¶¶16, 20. Dr. Riley allegedly told Plaintiff that "he's only addressing one

9

issue." *Id*., ¶15. Plaintiff appears to imply that Dr. Riley intentionally treated the wrong shoulder in 2020. *Id*., ¶20. Plaintiff's argument is misleading and undercut by the record. Plaintiff complained of chronic bilateral shoulder pain since 2010, meaning both of his shoulders had been in pain for a long period of time and both needed treatment. Plaintiff admits that he "had 2 weak painful shoulders since 2010." *Id*., ¶17. The record shows that Dr. Riley consistently examined and treated both shoulders since he got involved in Plaintiff's care in 2017. Plaintiff's assertion that Dr. Riley said he would only treat one shoulder is not supported by the record. At bottom, the dispute in this case is mere disagreement over Dr. Riley's decision to focus surgical efforts on one shoulder before moving on to the other shoulder. But Plaintiff's disagreement with Dr. Riley's exercise of medical judgment does not establish deliberate indifference.

The remainder of Plaintiff's arguments also have no merit. Plaintiff states that he did not get enough time to conduct discovery. Dkt. No. 63, ¶¶3–7. However, Plaintiff should have raised that issue while discovery was still open or shortly after it closed—it is far too late to raise that issue now. Plaintiff also states that Dr. Riley has submitted a variety of "false medical documentation" and that he has not "proven" that he is "allowed" to conduct orthopedic surgery. *Id*., ¶¶8–9. These assertions are frivolous, and the Court has no reasonable basis to doubt the authenticity of the documents provided by Dr. Riley. Finally, Plaintiff argues that Dr. Riley conducted surgery on his right shoulder in "retaliation" for Plaintiff stating that the cortisone injections (from August 2017) made his shoulders worse. *Id*., ¶26. This argument is unpersuasive as it is common practice to start with a more conservative treatment plan then progress to more invasive treatment, such as surgery, if conservative treatment does not work. Plaintiff reported that conservative treatment did not work; and he wanted and consented to right shoulder surgery.

Any statements to the contrary through this litigation are inconsistent with the record as a whole. Dr. Riley is entitled to summary judgment and the Court will dismiss this case.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Jane Doe "Pharmacy Supervisor" is **DISMISSED** from this case.

**IT IS THEREFORE ORDERED** that Defendants' motions for summary judgment (Dkt. Nos. 43 & 50) are **GRANTED.** The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 30th day of November, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge